IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BARRY MORRIS, #N42509,  )<br>  )<br>  Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>JACQUELINE LASHBROOK,  )<br>WEXFORD HEALTH SOURCES,  )<br>MS. GOLDMAN,  )<br>MS. HUEY,  )<br>MS. CANNON,  )<br>MR. HILLERMAN,  )<br>JOHN/JANE DOE, and  )<br>JOHN DOE,  )<br>  )<br>  Defendants.  ) | Case No. 18−cv–1504−MJR |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Barry Morris, an inmate in Menard Correctional Center ("Menard"), commenced this civil rights action pursuant to 42 U.S.C. § 1983 by filing a "Motion for Temporary Restraining Order/Injunction" ("TRO Motion") (Doc. 1) and a Motion for Leave to Proceed in forma pauperis ("IFP Motion") (Doc. 2). He did not file a separate Complaint, though he consistently refers to his TRO Motion as a "Complaint/TRO Injunction" throughout. The Court will immediately take up this matter based on Plaintiff's request for a TRO. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012). Because Plaintiff has clearly failed to exhaust his administrative remedies, this action will be dismissed.

### Relevant Facts

In his TRO Motion (Doc. 1), Plaintiff makes the following allegations: Plaintiff has been denied his psychotropic medication, Klonopin, since July 25, 2018. (Doc. 1, p. 4). By July 31,

1

2018, his prescriptions for Prozac, Prazosin, and Klonopin had all expired. (Doc. 1, p. 5). He wrote various letters to Menard staff beginning on August 2, 2018 regarding his need for the medications. *Id.* He also submitted an emergency grievance to Defendant Lashbrook that same day, and it was deemed an emergency on August 7, 2018 and flagged for expedited review. *Id.*; (Doc. 1-1, p. 11). Plaintiff submitted a follow-up emergency grievance on August 8, 2018 and August 12, 2018. (Doc. 1-1, pp. 17-18, 20). On August 12, 2018, Plaintiff's prescriptions for Prozac and Prazosin, two of the three medications at issue, were restored. (Doc. 1, p. 6). Plaintiff filed this action on August 15, 2018. (Doc. 1).

Plaintiff admits that he "has filed this Complaint/TRO Injunction without exhaustion of the grievance procedure." (Doc. 1, p. 2). He argues that the Court can "protect prisoners with [a] preliminary injunction while [it] wait[s] for them to exhaust [the] grievance procedure." *Id.* (citing *U.S. v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854-55 (9th Cir. 1995) and *Jackson v. District of Columbia*, 254 F.3d 262 (D.C. Cir. 2001).

## Discussion

"The Prison Litigation Reform Act of 1995 ("PLRA") mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S.Ct. 1850, 1854-55 (2016) (citing 42 U.S.C. § 1997e(a)). The Supreme Court recently emphasized the mandatory nature of the exhaustion requirement in *Ross*, noting that aside from the statutory exception to the exhaustion requirement for when administrative remedies are unavailable, "the PLRA's text suggests no limits on an inmate's obligation to exhaust–irrespective of any 'special circumstances.'" *Id.* at 1856. Emphasizing the lack of discretion in this area, the Court explained that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 1857.

The Court went on to explain the nature of the unavailability exception to the exhaustion rule. It began by noting that "the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* at 1858 (citations and internal quotations omitted). It continued by listing the three circumstances under which a grievance procedure could be considered unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

None of these exceptions apply to absolve Plaintiff of the exhaustion requirement. The Illinois Administrative Code sets forth the grievance procedures to be followed by committed persons. *See* 20 Ill. Adm. Code § 504.800 *et seq.* If deemed an emergency presenting "a substantial risk of imminent personal injury or other serious or irreparable harm to the offender," an inmate may send his grievance directly to the warden. 20 Ill. Adm. Code § 504.840(a). Plaintiff did just that on August 2, 2018. If the warden "determines that the grievance shall be handled on an emergency basis, he or she shall expedite processing of the grievance[.]" 20 Ill. Adm. Code § 504.840(b). Plaintiff was notified on August 7, 2018 that the warden deemed his grievance an emergency and that it would receive expedited review. On August 12, 2018, Plaintiff received two of his three medications back.

The grievance procedure in this instance clearly did not operate as a dead-end to Plaintiff, as he is currently in the midst of it and has received some relief in the form of two of his three medications. Plaintiff also is clearly capable of navigating the grievance procedure, as he

3

successfully submitted an emergency grievance that was deemed an emergency pursuant to 20 Ill. Adm. Code § 504.840. Plaintiff also has not been prevented from using the grievance procedure, as is clear by his having filed three emergency grievances in a ten-day span.

The Court recognizes that failure to exhaust administrative remedies is an affirmative defense, but "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). Such is the case here. Plaintiff admits that he did not exhaust, and his description of the status of his grievances confirms this failure. The grievance procedure is also plainly available to Plaintiff under the standard recently articulated by the Supreme Court in *Ross*. For these reasons, this case will be dismissed without prejudice for failure to exhaust administrative remedies.

## Pending Motions

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2) will be addressed in a separate order of this Court.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** as moot.

## Disposition

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice to Plaintiff filing a new lawsuit, but only after he has exhausted his administrative remedies.

This shall not count as a strike pursuant to 28 U.S.C. § 1915(g). *See Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010) ("The dismissal of an action for failure to exhaust . . . does not incur a strike.").

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the

action was filed, thus the filing fee of $400.00[1] remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockish*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur a "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: August 16, 2018**

                                                       s/ MICHAEL J. REAGAN
                                                       **U.S. Chief District Judge**

---

[1] Effective May 1, 2013, the filing fee for a civil case was increased to $400.00, by the addition of a new $50.00 administrative fee for filing a civil action, suit, or proceeding in a district court. *See* Judicial Conference Schedule of Fees - District Court Miscellaneous Fee Schedule, 28 U.S.C. § 1914, No. 14. A litigant who is granted IFP status, however, is exempt from paying the new $50.00 fee and must pay a total fee of $350.00.